Paul J. CATALANA and
Dorothy Catalana

v.

CARNIVAL CRUISE LINES, INC.

Civ. A. No. M–84–799.

United States District Court,
D. Maryland.

Sept. 13, 1984.

---

MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

The plaintiffs, Paul J. and Dorothy Catalana, filed this negligence and loss of consortium action on February 29, 1984, alleging personal injuries suffered by Paul J. Catalana when he was struck by a stray golf ball on January 1, 1982, while on board a cruise ship owned by the defendant, Carnival Cruise Lines, Inc. (Carnival) (Paper No. 1). The defendant has moved to dismiss for lack of personal jurisdiction, failure to state a claim, and improper venue, or, in the alternative, has moved for summary judgment (Paper No. 4). The plaintiff has responded (Paper No. 7), and the defendant has filed a reply (Paper No. 9). After reviewing the submitted memoranda, the court concludes that no hearing is necessary. Local Rule 6(E).

### I. *Factual Overview*

The plaintiffs, both residents of Maryland, contracted to be passengers aboard a cruise ship owned and operated by the defendant. The cruise was to leave Miami, Florida, visit ports of call in the Caribbean, and return to Miami. On January 1, 1982, while plaintiff, Paul Catalana, was walking aboard the cruise ship, he was struck on the left side of his head by a golf ball which had been driven from the ship's golf platform and ricocheted back toward the ship.

### II. *Motion to Dismiss for Lack of Personal Jurisdiction*

The defendant states in its motion to dismiss that it is a Florida corporation with its principal place of business in Florida, that it is not registered to do business in Maryland, and that it neither transacts business in Maryland nor engages in any activity which would subject it to the personal jurisdiction of this court (Paper No. 4, at 4–5). The affidavit of Jack J. Stein, an employee of the defendant with responsibility for coordinating passenger cruises, describes the defendant as a Panama corporation with its principal place of business in Florida (Stein Affidavit, ¶ 2). This affidavit

Howard Janet, Stephen L. Snyder, and George W. Liebmann, Baltimore, Md., for plaintiffs.

John H. West, III, Pamela J. White, and Ober, Kaler, Grimes and Shriver, Baltimore, Md., for defendant.

states that Carnival has no place of business in Maryland, is not registered to do business in Maryland, and does not transact business or engage in any activity in Maryland (*id.*). The corporation does not make direct sales of cruise ship accommodations in Maryland, but receives booking requests from travel agents throughout the country (*id.*). Carnival does not own or lease property in Maryland, has no offices in Maryland, has no bank accounts or telephone numbers in Maryland, and does not engage the services of any marketing representatives in Maryland (Stein Affidavit, ¶ 3). The voyage on which the plaintiff was allegedly injured originated and concluded at Miami, Florida, and was conducted through the Caribbean (Stein Affidavit, ¶ 4).

If this court has personal jurisdiction over the defendant in this case, it has it under the Maryland Long Arm Statute, *Md.Cts. & Jud.Proc.Code Ann.* § 6–103. Application of the long arm statute is a two step process. First, the court must determine whether the statute purports to permit service of process on the non-resident. Second, the court must determine whether the service and exercise of personal jurisdiction comports with constitutional requirements under the Due Process Clause. *Synder v. Hampton Industries, Inc.*, 521 F.Supp. 130, 135 (D.Md.1981); *Craig v. General Finance Corp. of Illinois*, 504 F.Supp. 1033, 1036 (D.Md.1980).

The plaintiffs assert that this court has jurisdiction pursuant to subsections (b)(1), (b)(2), and (b)(4) of the Maryland Long Arm Statute, which provides, in pertinent part, as follows:

"(a) *Condition.*—If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

(b) *In general.*— A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State; ...

(4) Causes tortious injury in the State or outside of the State by an act or omission outside of the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured goods used or consumed in the State."

*Md.Cts. & Jud.Proc.Code Ann.* § 6–103 (1974).

Personal jurisdiction will exist under the Maryland Long Arm Statute if any one of its subsections is satisfied. *Craig v. General Fin. Corp.*, 504 F.Supp. 1033, 1036 (D.Md.1980). In addition, as this court stated in *Craig*, 504 F.Supp. at 1036:

"This court is bound by the decisions of the Court of Appeals of Maryland as to whether a particular subsection will reach certain conduct. *McLaughlin v. Copeland*, 435 F.Supp. 513, 522 (D.Md. 1977); *Bennett v. Computers Intercontinental, Inc.*, 372 F.Supp. 1082, 1084 (D.Md.1974). *See Shealy v. Challenger Mfg. Co.*, 304 F.2d 102, 104 (4th Cir.1962). Federal law is controlling, however, as to whether the exercise of personal jurisdiction violates due process. *United Merchants & Mfrs., Inc. v. David & Dash, Inc.*, 439 F.Supp. [1078] at 1081 [D.Maryland 1977]."

The plaintiffs assert personal jurisdiction under subsection (b)(1) of the Maryland Long Arm Statute, based on Carnival's "regular arrival and departure of vessels within the state" (Paper No. 7, at 5). The "transacting business" standard of subsection (b)(1) has been held to be coextensive with the limits of due process. *Snyder v. Hampton Industries, Inc.*, 521 F.Supp. 130, 136 (D.Md.1981); *McLaughlin v. Copeland*, 435 F.Supp. 513, 523 (D.Md. 1977); *Malinow v. Eberly*, 322 F.Supp. 594, 598 (D.Md.1971); *Geelhoed v. Jensen*, 277 Md. 220, 224, 352 A.2d 818 (1976). Reliance on Carnival's cruises from Baltimore for jurisdiction under subsection (b)(1) is

misplaced, however, due to the limitation imposed by subsection (a).

In *Sibert v. Flint*, 564 F.Supp. 1524 at 1528 (D.Md.1983), this court described the relationship between subsections (a) and (b)(1) of the Maryland Long Arm Statute as follows:

> "Consideration of personal jurisdiction under subsection (b)(1) necessarily invokes the limitation in subsection (a) that the cause of action arise from an act enumerated in (b)(1). Although subsection (a) does not provide any substantive limitation which exeeds that imposed by the Due Process Clause, *see Malinow v. Eberly*, 322 F.Supp. 594, 598–600 (D.Md. 1971), it does require that 'some purposeful acts [have been] performed by the defendant in Maryland in relation to one or more of the elements of the cause of action,' *id.* at 599. *Accord Snyder v. Hampton Industries, Inc.*, 521 F.Supp. 130, 145–46 (D.Md.1981); *McLaughlin v. Copeland*, 435 F.Supp. 513, 522–23 (D.Md.1977)."

The cruises on which the plaintiffs base their claim of jurisdiction left the port of Baltimore. The plaintiffs' cruise, however, began and ended in Miami. Because the plaintiffs' cause of action did not arise from the Baltimore cruises, the Baltimore cruises may not support a finding of personal jurisdiction under subsection (b)(1).

■ The plaintiffs assert that this court has personal jurisdiction pursuant to subsection (b)(2) also, because the ticket issued in this case was an air/sea contract originating in Baltimore. The defendant's brochure advertises free or reduced air fare from over 160 cities to Miami or Los Angeles for passengers on Carnival cruises. (1984 Carnival Cruise Lines brochure at 9, appended to plaintiffs' Memorandum in Response). The plaintiffs do not contend that the ticket was sold by an agent of Carnival rather than an independent travel agency. Nor do the plaintiffs claim that the carrier which flew them from Baltimore to Miami was an agent of the defendant. Instead, they contend that the defendant should be subject to personal jurisdiction simply be-

cause it offers air/sea tickets originating in Baltimore. Since the plaintiffs assert no action by Carnival with respect to the activities in Maryland, their argument is based on the actions of other entities, the travel agent and the airlines. Travel agents are not generally considered to become the agent of the one selling the cruise simply by providing tickets to passengers. *Mulhern v. Holland America Cruises*, 393 F.Supp. 1298, 1302 (D.N.H.1975). Nor is it likely that the airline, by carrying the passengers to Miami for these cruises, was acting as the agent of the defendant.

There is, therefore, no indication why the acts of the other entities should be attributed to the defendant.

> "It is essential in each case that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state—thus invoking the benefit and protection of its laws."

*Harris v. Arlen Properties, Inc.*, 256 Md. 185, 195 (1969), *citing Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). As with the analysis of subsection (b)(1), the cruises by Carnival within Maryland are prevented by subsection (a) from providing jurisdiction under subsection (b)(2), because the cause of action alleged in this case did not arise from the Maryland cruises.

■ If this court possesses personal jurisdiction over the defendants, it must be as a result of subsection (b)(4). This subsection permits the court to exercise personal jurisdiction over a defendant who "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured goods used or consumed in the State." This court has stated with regard to subsection (b)(4):

> "This section authorizes jurisdiction over tortious causes of action causing injury anywhere by acts committed or omitted anywhere provided that the defendant has a sufficient nexus with

Maryland to satisfy the terms of the statute."

*Topik v. Catalyst Research Corp.*, 339 F.Supp. 1102, 1106 (D.Md.1972), *aff'd*, 473 F.2d 907 (4th Cir.1973), *cert. denied*, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973). Furthermore, where jurisdiction is founded on subsection (b)(4), the requirement of subsection (a) need not be satisfied. *Greenwood v. Tides Inn, Inc.*, 504 F.Supp. 992, 996 (D.Md.1980); *Carter v. Massey*, 436 F.Supp. 29, 32 (D.Md.1977). The Baltimore cruises can, therefore, be taken into account in the examination under subsection (b)(4).

■ The burden of alleging and proving the jurisdictional facts, once they have been placed in controversy, rests with the plaintiffs. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *United Merchants & Mfrs., Inc. v. David & Dash, Inc.*, 439 F.Supp. 1078, 1081 (D.Md.1977); *Malinow v. Eberly*, 322 F.Supp. 594, 600 (D.Md. 1971). The defendant denies engaging in any purposeful activity in Maryland (Paper No. 4, at 9; Stein Affidavit, ¶ 2). The plaintiffs, however, have produced evidence that the defendant regularly conducted cruises out of the port of Baltimore during the spring and fall from 1978 through 1983 (Paper No. 7, at 1–2; Liebmann Affidavit, ¶ 2).

■ Subsection (b)(4) sets up three alternative tests for determining when a defendant has a "sufficient nexus" with Maryland to satisfy the statute. It is apparent that all three of the tests are met here. First, defendant's cruises out of Maryland during the spring and fall for six consecutive years constitutes regularly doing business in the state sufficient to satisfy the first test. Second, this same conduct satisfies the second test, because the defendant has engaged in a persistent course of conduct within the meaning of the statute. *Topik v. Catalyst Research Corp.*, 339 F.Supp. 1102 (D.Md.1972), is analogous in this finding. In *Topik*, this court found corporate directors to be engaging in a persistent course of conduct by coming into Maryland each year for five years to attend the annual stockholders and board of directors meetings. 339 F.Supp. at 1107. Third, the defendant has carried a large number of passengers on its cruises departing from Baltimore. These passengers have certainly provided Carnival with substantial revenue from services provided, at least in part, in Maryland.

Exercise of personal jurisdiction over the defendant in this case does not violate due process constraints. By using the port of Baltimore as a site for regularly scheduling cruises, Carnival has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). It cannot be said that requiring Carnival to defend a suit brought against it in a court in Maryland would violate "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), *citing Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940). For these reasons, this court possesses personal jurisdiction over the defendant Carnival Cruise Lines, Inc.

III. *Contractual Effect of Ticket Conditions*

■ The defendant contends that the plaintiffs' complaint fails to state a claim because the suit is barred by contractual limitations. Paragraph 7 of the passenger ticket issued by the defendant stated:

"The Carrier shall not be liable for any claims whatsoever of the passenger unless full particulars thereof in writing be given to the Carrier or their agents within 185 days after the passenger shall be landed from the vessel or in the case the voyage is abandoned within 185 days thereafter. Suit to recover any claim shall not be maintainable in any event unless commenced within one year after the date of the loss, injury or death."

In the alternative, the defendant asserts that venue in this court is improper under paragraph 8 of the passenger ticket, which stated:

"It is agreed by and between the passenger and the Carrier that all disputes and matters whatsoever arising under, in connection with or incident to this Contract shall be litigated, if at all, in and before a Court located in the State of Florida, U.S.A., to the exclusion of the Courts of any other state or country."

These conditions were stated on the reverse of the passage ticket. The front of the ticket contains three references to the provisions on the back. In the lower right-hand corner of the ticket appears: "The provisions on the reverse hereof are incorporated as though fully rewritten." The lower right-hand corner calls attention to the provisions twice, stating: "Subject to Conditions of Contract on Last Pages," and "Important! Please Read Contract on Last Pages 1, 2, 3." The terms of the contract are also called to the passengers' attention in the brochure given to passengers at embarkation.

There is no dispute as to whether the plaintiffs received the ticket in question. The plaintiffs, however, argue that the conditions should not be given effect, because the ticket was not signed by the passengers, and there is no evidence that the conditions were ever brought to the passengers' attention. Plaintiffs rely heavily on the Supreme Court's decision in *The Majestic*, 166 U.S. 375, 17 S.Ct. 597, 41 L.Ed. 1039 (1897), to support their argument.

The contractual effect of conditions printed on a ticket has received a great deal of attention. *See, e.g.,* Annot., 5 A.L. R.Fed. 394 (1970). Essentially, whether the conditions are given contractual effect depends on whether they are determined to have been incorporated into the contract for passage. Such a determination is often made by examining the form of the ticket used to see whether it provided adequate notice to the passenger that the conditions were to be part of the passage contract.

In *The Majestic*, 166 U.S. 375, 17 S.Ct. 597, 41 L.Ed. 1039 (1897), the Supreme Court held a limitation provision on the back of a ticket not binding on a passenger because it was "a mere notice." The Court held that the conditions "were not included in the contract proper, in terms or by reference," and, therefore, could not be given any effect without being brought to the passengers' attention. 166 U.S. at 385, 17 S.Ct. at 601. Although this case has been followed in a number of subsequent cases, *see, e.g., Silvestri v. Italia Societa Per Azioni Di Navigazione,* 388 F.2d 11 (2d Cir.1968), other courts have found that where the front of the passage ticket contains conspicuously placed legends purporting to incorporate into the passage contract the conditions on the ticket's back, the conditions will be enforced. For example, in *Geller v. Holland-America Lines,* 298 F.2d 618 (2d Cir.1962), a time limitation requiring an action for personal injuries to be brought within one year was held to bar an action brought more than a year after the injury, even though the ticket in that case was collected at the time of embarkation. Similarly, in *DeNicola v. Cunard Line Ltd.,* 642 F.2d 5 (1st Cir.1981), a restriction requiring personal injury actions to be brought within one year was upheld because "the defendant had done all it reasonably could to warn of both [the conditions'] existence and their importance." *Id.* at 11. *See also Miller v. Lykes Bros. S.S. Co.,* 467 F.2d 464 (5th Cir.1972).

Only one reported case in this district has been found relating to this issue. In *The City of Norfolk,* 13 F.Supp. 511 (D.Md. 1936), steamship passengers brought an action for damage to their baggage in an amount in excess of the limitation of liability stated on the reverse of the passenger ticket. The front of the ticket directed the passenger to the back, where the conditions were continued. In rejecting the passengers' claim that the limitation did not bind them because it was never brought to their attention and not actually known by them, the court stated:

"In my opinion the clause limiting the amount of liability on the tickets here involved was a part of the contract and not a mere notice to the passengers, and the case is, therefore, not governed by the rule of The Majestic. Nor is it a sound objection to this conclusion that the particular condition happened to be printed on the back of the ticket (there not being space on the face for the inclusion of all the contract terms), as the attention of the ticket holder was appropriately called to the continuation of the contract terms by the wording on the face of the ticket."

13 F.Supp. at 513.

The defendant in this case called attention to the contract conditions by inserting legends on the front of the ticket and in the brochure given to passengers upon embarkation. There is little more that the defendant could have done to call the contract conditions to the attention of the passengers and to impress upon them their importance. These references were adequate to incorporate the limitation and venue provisions into the passage contract.

It is not disputed that the injury involved here occurred on January 1, 1982. This action, however, was not filed until February 29, 1984, over two years after the date of the injury. Under paragraph 7 of the ticket contract, the limitations provision that a suit must be commenced within one year from the date of injury, this action cannot be maintained.

For the reasons set forth above, it is this 13th day of September, 1984, by the United States District Court for the District of Maryland, ORDERED:

1. That the Motion to Dismiss for Lack of Personal Jurisdiction filed by Carnival Cruise Lines, Inc. be, and the same is hereby, DENIED.

2. That the Motion to Dismiss for failure to state a claim due to contractual limitations be, and the same is hereby, GRANTED.