**Arthur W. HOLFIELD, Jr.**

v.

**POWER CHEMICAL COMPANY, INC.**

**Civ. No. 73-926-Y.**

United States District Court,
D. Maryland.

Sept. 26, 1974.

Brendan V. Sullivan, Jr., James A. McGuire, Washington, D. C., for plaintiff.

William T. Brooks, Atlanta, Ga., Ronald A. Karp, Donald J. Chaikin, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

JOSEPH H. YOUNG, District Judge.

Plaintiff Arthur W. Holfield, Jr., a citizen of Maryland, brings this diversity action to rescind a contract under which he was to distribute the products of Power Chemical Company, Inc., a Georgia corporation, and, alleging certain misrepresentations, seeks restitution of the sums he paid under that contract plus compensatory and punitive damages. Defendant is Howard E. Caldwell, a Georgia resident, who at the time relevant to this case was president of Power Chemical as well as a member of the board of directors and the majority shareholder.

Plaintiff, seeking to pierce the corporate veil, contends that Power Chemical is but a corporate shell, Caldwell's alter ego. The defendant has moved pursuant to Rule 12(b), Federal Rules of Civil Procedure, for a dismissal, arguing that the Court lacks personal jurisdiction over him.

In accordance with the local rules of this Court, defendant's motion and plaintiff's response have included a brief statement of the parties' respective arguments plus affidavits and, in the plaintiff's case, other exhibits.

As the defendant correctly notes, federal district courts exercise personal jurisdiction within the framework of Rule 4 of the Federal Rules of Civil Procedure. Rule 4 subsections (e) and (f) limit service of process by the district court, and therefore the court's personal jurisdiction, by confining service to the territorial limits of the state in which the court sits, unless federal statute, the federal rules, or state law authorizes extra-territorial service. The plaintiff apparently concedes that no federal statute or rule permits service on Caldwell and seeks to base service solely on Maryland's "long-arm" statute, Md.Ann.Code, Cts. & Jud.Proc. Art. § 6–103 (1974).*

▪ As the Fourth Circuit noted with regard to Virginia's "long-arm" statute, and both this Court and the Maryland Court of Appeals have previously declared, determining the applicability of section 6–103 to a particular fact situation is a two-step process. First, it must be determined if the defendant is within the ambit of the statute itself. If the court decides that the statute will permit service on the defendant, it then must determine if such service satisfies the constitutional demands of due process. *See* Haynes v. James H. Carr, Inc., 427 F.2d 700, 703 (4th Cir.), cert. denied, 400 U.S. 942, 91 S.Ct. 238, 27 L.Ed.2d 245 (1970); Topik v. Catalyst Research Corp., 339 F.Supp. 1102, 1105–1106 (D.Md.1972), cert. denied, 414 U.S. 910, 94 S.Ct. 231, 38 L. Ed.2d 148 (1973); Malinow v. Eberly, 322 F.Supp. 594, 597 (D.Md.1971); Lamprecht v. Piper Aircraft Corp., 262 Md. 126, 130, 277 A.2d 272, 275 (1971).

▪ In determining the reach of Maryland's long-arm statute, decisions by the Maryland state courts interpreting the statute control. *See* Shealy v. Challenger Mfg. Co., 304 F.2d 102, 104 (4th Cir. 1962); Hare v. Family Publications Serv., Inc., 342 F.Supp. 678, 681 (D.Md.1972) [hereinafter cited as *Hare II*]. The burden of alleging and proving the jurisdictional facts upon which the personal jurisdiction of this Court are based lies with the plaintiff. *See* McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); Haynes v. James H. Carr, Inc., *supra*, 427 F.2d at 704; Topik v. Catalyst Research Corp., *supra*, 339 F.Supp. at 1105. Mere averments of jurisdiction are not enough nor may conclusory, unsupported statements contained in the accompanying affidavits be relied upon to demonstrate jurisdiction. *See* Leasco Data Processing Equip. Corp. v. Maxwell, 319 F.Supp. 1256, 1260 (S.D.N.Y.1970), modified on other grounds, 468 F.2d 1326 (2d Cir. 1972). Finally where, as in this case, determination of factual disputes central to the assertion of jurisdiction may be dispositive of questions of liability as well, the plaintiff need only show "threshold" jurisdiction sufficient to demonstrate the fairness of allowing the suit to continue. The parties are not bound by the court's jurisdictional findings of fact when the case comes to trial on the merits. *See* Hare v. Family Publications Serv., Inc., 334 F.Supp. 953, 959 (D.Md.1971) [hereinafter cited as *Hare I*]; Malinow v. Eberly, *supra*, 322 F.Supp. at 601.

▪ Laid side-by-side, the parties' affidavits show no fundamental differences as to the facts. Both agree that the defendant is president, majority shareholder and a member of the three-man board of Power Chemical. Both also agree that the defendant is a Georgia resident and that he has never been in the State of Maryland except as a tourist. In addition, the two parties agree that though Power Chemical is now defunct, in 1972 it solicited Maryland residents for the purpose of selling

---

* The plaintiff actually bases his argument on Md.Ann.Code art. 75, § 96(a)(1)–(4) (1969 Repl.Vol.). Just prior to the time when this action was filed, § 96(a), cited by the plaintiff, was superseded by § 6–103 of the new Courts and Judicial Proceedings Article. The revisor's notes to the new article indicate that only style changes were made and no substantive changes were intended. Therefore the jurisdictional question will be discussed here in the context of the new statutory language.

"distributorships" for Power Chemical's hair spray. The defendant concedes that Power Chemical accepted the plaintiff's application for such a distributorship, the acceptance being executed by the defendant in his role as president of the corporation. After plaintiff's application was accepted, he was assigned an "exclusive" territory in Maryland, and the hair spray he was to distribute in Maryland was shipped to him.

In his affidavit the defendant seeks to interpose the corporate identity of Power Chemical between himself and the personal jurisdiction of this Court. He avers that he has neither advertised in Maryland, nor contracted with any of its residents, nor committed any torts in the state. It is his contention that the only link between himself and the State of Maryland is the role he played in his official capacity as president of Power Chemical—a role as the corporation's agent which shields him from the reach of Maryland's long-arm statute.

The plaintiff, on the other hand, relying heavily on the defendant's deposition, argues that the defendant's admissions in that deposition establish Power Chemical as a facade—the vehicle for the defendant's hair spray venture, having no identity of its own. In his deposition the defendant concedes that Power Chemical's sole business during the period in question was the distribution of hair spray. The corporation was used for hair spray distribution for approximately 12 months, and, during that time, its only capital was its inventory which, by the defendant's own estimate, never exceeded $40,000 in value and is presently virtually valueless. The deposition reveals that the distribution program was conceived by the defendant, managed by him, and brought to an end when he determined that it was no longer profitable. In both affidavit and deposition the defendant places heavy emphasis on the fact that distributorship solicitation was carried out by "independent contractors" who paid their own expenses out of the commissions they received for each distributorship

they sold. Yet, the defendant admits that he hired "independent contractors" who in turn hired the next level of solicitors, that he supervised preparation of the advertising materials they used, and that he signed the distributorship agreements which these solicitors forwarded to the corporation for its acceptance—acceptance by the corporation's three-man board of which he, of course, was a member. Furthermore, while claiming in his affidavit that he never received any compensation for his services, in his deposition he admits that he did in fact draw a salary while the hair spray distribution was active. The defendant's deposition also reveals that Power Chemical received substantial sums for the sale of two distributorships in Maryland.

The question posed by the defendant's motion, therefore, is whether or not there is sufficient identity of interest between the defendant and Power Chemical for the acts of one to be attributable to the other, and, if that congruence of interest is found, whether or not the Maryland courts, in construing the Maryland long-arm statute, would then disregard the corporate entity to reach the defendant. Assuming that question to be answered in the affirmative, the second step of long-arm statute analysis comes into play. The Court then must decide if such a construction of the Maryland statute by the Maryland courts meets federal due process requirements.

Maryland's long-arm statute provides six possible bases for assertion of personal jurisdiction by Maryland courts over out-of-state residents. *See* Md. Ann.Code, Cts. & Jud.Proc. Art., § 6–103(b) (1974). If the defendant falls within any one of these six sources of jurisdiction, he is subject to service by Maryland. *See* Lawson v. Baltimore Paint & Chem. Corp., 298 F.Supp. 373, 377 (D.Md.1969); cf. Lamprecht v. Piper Aircraft Corp., *supra*, 262 Md. at 132–133, 277 A.2d at 276. Plaintiff argues that the defendant has transacted business within the State of Mary-

land, contracted to supply goods and/or manufactured products in Maryland, and caused tortious injury either in or outside of the state while deriving substantial revenue from goods used or consumed in the State of Maryland. He thereby seeks to bring the defendant under section 6–103(b)(1)–(4).

There would appear to be no real question that Power Chemical has sufficient contacts with the State of Maryland to justify assertion of personal jurisdiction over it under the Maryland long-arm statute. In *Lamprecht* the Maryland Court of Appeals held that a Pennsylvania corporation, which sold airplanes through independent distributors who in turn sold them to Maryland dealers, could be subjected to the personal jurisdiction of the Maryland courts under the statutory predecessor of section 6–103(b)(4) for tortious injuries caused by its products in Maryland. The Pennsylvania corporation advertised its airplanes in Maryland through national advertising media, and it corresponded with Maryland residents who expressed an interest in its planes. The court felt some uncertainty as to whether these contacts in themselves would be sufficient to satisfy the statute. It declared, however, that if the company derived substantial revenue from the sale of its planes, personal jurisdiction could be had, and the case was remanded for a determination of that issue. *See* 262 Md. at 129–133, 277 A.2d at 274–275. While there are distinctions between a products liability case and an action for fraudulent misrepresentation, the considerations weighed in *Lamprecht* suggest that the Maryland courts would find Power Chemical subject to their personal jurisdiction in this instance as well, given the use in this case of company-approved advertising in Maryland, correspondence by the corporation with Maryland residents who inquired about distributorships, and, most significant, the substantial revenues which the corporation derived from its sale of two distributorships in Maryland. Furthermore, the distributorship agreement obligated Power Chemical to supply hair spray to its distributors. Thus, when Power Chemical accepted the plaintiff's application for a distributorship, assigned him a Maryland territory, and, pursuant to that agreement, shipped cartons of hair spray to him, it contracted to supply goods in the state, satisfying the requirements of section 6–103(b)(2), making the case for extending personal jurisdiction here even stronger than the fact situation presented in *Lamprecht*. As noted, any one jurisdictional source will suffice. It is therefore unnecessary to decide if Power Chemical also comes within the ambit of subsections 6–103(b)(1) and (3).

The defendant in effect concedes that Power Chemical is subject to this Court's personal jurisdiction, but argues that whatever the jurisdictional status of the corporation, its acts and their jurisdictional consequences are not attributable to him. There are few cases on "piercing the corporate veil" for jurisdictional purposes, *see* 4 C. Wright & A. Miller, Federal Practice and Procedure, Civil § 1069, at 22–23 (1973 Pocket Part). The Maryland Court of Appeals in Harris v. Arlen Properties, Inc., 256 Md. 185, 260 A.2d 22 (1969), held that "in order to hold the corporate veil inviolate, at least insofar as jurisdiction is concerned, it is necessary as a factual matter that a corporation have some independent reason for its existence, other than being under the complete domination and control of another legal entity simply for the purpose of doing its act and bidding." 256 Md. at 199–200, 260 A.2d at 29 (citation omitted). In *Harris* a partner in a New York partnership was sued in his individual capacity for damages arising out of a land transaction in Maryland entered into by a New York corporation wholly owned by the New York partnership. Apart from his ownership interest in the corporation via the partnership, the partner in question had no other contact with the State of Maryland. *See* 256 Md. at 199–201, 260 A.2d at 29. The Court of Appeals reasoned that the

sole purpose for the corporate existence of the New York corporation was to hold title to real estate for the benefit of the partnership. It therefore found that the corporate entity could be disregarded for jurisdictional purposes. Those acts of the corporation which gave the Maryland courts jurisdiction over it were attributed to the beneficial owner of the corporation. The non-resident partner was thereby subject to the state's personal jurisdiction. *See* 256 Md. at 201, 260 A.2d at 30.

The defendant in the instant case is president, member of the board and majority shareholder in a corporation whose only function was to carry out the defendant's scheme for selling hair spray distributorships. It would appear from the defendant's deposition that he was the guiding genius behind the hair spray venture—he conceived it, guided its progress from his positions as president and board member, and brought it to an end. The case for disregarding the corporate entity therefore appears even stronger here than in *Harris*. Consequently, given the rationale of the Court of Appeals in *Harris*, Maryland's long-arm statute, as interpreted by Maryland's highest court, would appear to *permit attribution of Power Chemical's jurisdictional acts to its controlling personality*, thereby subjecting the defendant to the personal jurisdiction of this Court.

■ Although Maryland's long-arm statute is intended to give Maryland courts jurisdiction to the full extent permitted by the Constitution, *see* Gilliam v. Moog Indus., Inc., 239 Md. 107, 111, 210 A.2d 390, 392 (1965), and consequently Maryland courts consider the constitutional limits on the exercise of personal jurisdiction when they construe the Maryland statute, *see* Lamprecht v. Piper Aircraft Corp., *supra*, 262 Md. at 130, 277 A.2d at 275, this Court, in deciding whether or not the Maryland statute, as interpreted by the Maryland courts, meets constitutional standards, must look to the United States Supreme Court, the Fourth Circuit and its own

decisions. *See* Topik v. Catalyst Research Corp., *supra*, 339 F.Supp. at 1106; Piracci v. New York City Employees' Retirement System, 321 F.Supp. 1067, 1070 (D.Md.1971). Thus, the present question is whether the Maryland Court of Appeals exceeded constitutional bounds in *Harris* when it placed its "piercing the corporate veil" gloss on the Maryland long-arm statute.

While the Supreme Court has marked the outer limits of due process with regard to state long-arm statutes in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny, the Court's decisions supply only the most general kind of guidance. *See* 4 C. Wright & A. Miller, *supra* § 1067, at 224–41 (1969). On the question of piercing the corporate veil for jurisdictional purposes, given the facts of the case at hand, the previous decisions of this Court would appear to offer the most useful guide.

Our decisions are in accord with the general rule perceived by Professors Wright and Miller that the corporate entity will normally insulate corporate employees, officers, directors, etc., from personal jurisdiction where suit is brought against them individually. *See* Hare II, *supra*, 342 F.Supp. at 684; Topik v. Catalyst Research Corp., *supra*, 339 F.Supp. at 1107; 4 C. Wright & A. Miller, *supra* § 1069, at 23 n. 80.3 and accompanying text (1973 Pocket Part). Nonetheless, this Court has recognized exceptions to that general rule. *See* Topik v. Catalyst Research Corp., *supra* (non-resident directors of Maryland corporation held subject to long-arm statute in stockholder derivative suit for breach of fiduciary duty); McCormick & Co. v. Bedford Industries, Inc., 301 F.Supp. 29 (D.Md.1969), rev'd on other grounds, 468 F.2d 757 (4th Cir. 1972) (non-resident husband and wife who were officers and directors of out-of-state corporation held subject to Maryland long-arm statute where negotiations for sale of foreign corporation to Maryland corporation were undertaken by them in Maryland); Lawson v.

Baltimore Paint & Chemical Corp., *supra* (directors of Maryland corporation held subject to Maryland long-arm statute in shareholder derivative suit despite fact that board meetings not held in Maryland). The present case comes closer to the constitutional line, however, than any of the fact situations this Court has previously considered. The corporation involved is not a Maryland corporation, and the defendant did not himself enter Maryland for the purpose of soliciting the distributorship in question. The only way the defendant can be linked to Maryland is by attributing the acts of the corporation to him.

 Nonetheless, all that due process requires, insofar as assertion of personal jurisdiction by a state over a non-resident is concerned, is minimum contact with the forum state by the defendant sufficient to satisfy traditional notions of fair play and substantial justice. *See* International Shoe Co. v. Washington, *supra*, 326 U.S. at 316, 66 S.Ct. 154. The only qualification is that unilateral acts by the plaintiff alone will not suffice to bring the defendant within the personal jurisdiction of the forum state. *See* Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). As the Eighth Circuit recently noted "[i]mplicit in the application of any long-arm statute are considerations of convenience, fairness and the avoidance of harassment." Block Indus. v. DHJ Indus., Inc., 495 F.2d 256, 260 (8th Cir. 1974).

The jurisdictional facts presented here suggest that Power Chemical was in fact the alter ego of the defendant. The defendant put the distribution program into motion, he was personally aware of its interstate scope because he signed the distribution agreements, he prepared the solicitation materials, and, though solicitation was by others who apparently had considerable discretion; it was his decision to give them that discretion. Given his intimate involvement, the defendant cannot now claim that he has been unfairly surprised by a lawsuit growing out of that involvement in Maryland.

Furthermore, this case, like *Harris*, does not find the state of Maryland in a neutral posture. One factor which should be considered in deciding the constitutional reach of a long-arm statute is the interest of the state in the cause of action. *See* Block Industries v. DJH Industries, Inc., *supra* at 259. Clearly in this action brought by a Maryland resident for a fraud allegedly committed by the non-resident defendant, having to do with a contract for the distribution of goods in Maryland, the State of Maryland has a strong interest.

Where, as in this case, there is an unmistakable identity of interest between the defendant and the corporation through which he acts, where that corporation has acted in a manner that brings it within a long-arm statute, and where significant forum state interests are involved in the cause of action, then disregarding the corporate entity to reach the defendant for the purpose of asserting the personal jurisdiction of the state courts over the defendant does not offend the due process requirements of the Constitution. Insofar as *Harris* stands for that proposition, it is constitutional, and, given the gloss placed on the Maryland long-arm statute by *Harris*, this Court may assert personal jurisdiction over the defendant pursuant to Rule 4 of the Federal Rules.

For the foregoing reasons, it is this 26th day of September, 1974, ordered:

That the defendant's motion be, and the same is, hereby denied, and

That defendant file a response to the complaint within 20 days.